UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES A. YOCUM, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:14-cv-00970-SGC |
| NATIONSTAR MORTGAGE, LLC, et al., | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION**

This matter is before the undersigned on the motion for sanctions filed by Nationstar Mortgage, LLC ("Nationstar"), on May 23, 2017. (Doc. 68). In its motion, Nationstar asserts this action is due to be dismissed because Plaintiff has repeatedly made false statements to the court. (*Id.*). Nationstar also seeks attorneys' fees and costs. (*Id.*). The motion is fully briefed and ripe for review. (Docs. 72, 73). For the reasons discussed below, the undersigned recommends dismissal with prejudice as an appropriate sanction and further recommends the court retain jurisdiction to determine whether costs, including attorneys' fees and expenses, should be taxed to Plaintiff James A. Yocum, Jr.

**I. FACTS AND PROCEDURAL HISTORY**

  **A. Plaintiff's Pleadings**

    1. First Amended Complaint

Plaintiff James Yocum initiated this action *pro se* by filing a verified complaint in the Circuit Court of Jefferson County, Alabama, on April 18, 2014. (Doc. 1-1 at 2). Nationstar removed this case to federal court on May 23, 2014. (Doc. 1). On May 29, 2014, Plaintiff filed his first amended complaint (the "FAC"). (Doc. 5). In the FAC, Plaintiff asserted claims against Nationstar and Renasant Bank ("Renasant") pursuant to the Real Estate Settlement Procedures

Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). (*Id.*). Mr. Yocum also sought a declaratory judgment that he has a right to undisturbed possession of the subject property (the "Property") and asserted a state law claim to quiet title against Nationstar and Renasant pursuant to Ala. Code § 6-6-560 *et seq.* (*Id.*).

On January 15, 2016, the undersigned entered a report recommending all claims be dismissed without prejudice and that Plaintiff be permitted to file a final complaint "satisfactorily address[ing] the deficiencies" in his FAC. (Doc. 33 at 21). After objections were received, U.S. District Judge Madeline Haikala entered a memorandum opinion and order. (Doc. 39). The order adopted the findings and recommendations in the report, with the exception that Mr. Yocum's quiet title action was found to state a claim upon which relief could be granted against Renasant Bank. (*Id*. at 5-6).

While Plaintiff objected to the undersigned's recommendation that he be limited to one final amendment, the court overruled his objection and found that "[g]iven Mr. Yocum's extensive litigation in *Yocum v. BAC Home Loans Servicing LP*, 2:10-cv-02574-AKK and the bankruptcy actions, [] and his previous amendment in this action, justice and Federal Rule of Civil Procedure 15(a)(2) do not require more than one additional opportunity to amend." (*Id.* at 12). The court dismissed without prejudice the remaining claims in Mr. Yocum's complaint, stating, "Mr. Yocum may replead those claims in accordance with the guidance provided in the magistrate judge's report and recommendation and this memorandum opinion and order." (*Id.*).

   2. Second Amended Complaint

On October 11, 2016, Plaintiff, through counsel, filed a second amended complaint (the "SAC"). (Doc. 51). In the SAC, which consists of 213 pages, Plaintiff added several parties and claims, contrary to the instructions of the report and recommendation and the district judge's

2

memorandum opinion and order. Specifically, Plaintiff added defendants Bank of America, N.A.; Sirote & Permutt, PC; Ginny Rutledge; and Andy Saag. He also added various claims, including claims under sections of the FDCPA which had not been raised in the FAC.[1] In a report and recommendation entered following a hearing held with the parties, the undersigned expressed the view that the SAC went well beyond the scope permitted by the district judge's memorandum opinion and order. (Doc. 64). The undersigned recommended the SAC be struck to the extent it exceeded the court's instructions and that only those claims asserted in the FAC, as repleaded in the second amended complaint, be permitted to proceed. (*Id.* at 2). The report and recommendation as to the SAC remains pending.

**B. Plaintiff's False Allegations And Related Facts**

    1. <u>Plaintiff's statements and omissions in the instant case</u>

In the SAC, Plaintiff alleges he "has superior title to the subject real property in fee simple title, by virtue of a Statutory Warranty Deed granted to him by Patricia Morris Yocum on November 7, 2000…" (Doc. 51 at 3).[2] This deed was granted to Plaintiff by virtue of a final divorce judgment recorded in Jefferson County on November 15, 2000. (*Id.* at 4). No party disputes this transfer occurred and was valid.

Plaintiff further alleges he executed a mortgage and note in favor of Renasant Bank in 2005. (*Id.*). Following several transfers of the mortgage, which Plaintiff contends were fraudulent or otherwise defective, Nationstar eventually became involved as a servicer of the note. (*See, e.g.,* Doc. 51 at 24-27). Yocum's remaining allegations and claims are directed at the conduct of the defendants, including the individual attorney defendants, as they corresponded

---

[1] While the first amended complaint stated only claims under § 1692g(b), the SAC added claims under §§ 1692e(10) and 1692e(13).

[2] Plaintiff has made similar allegations elsewhere in this case and in other venues. That history is detailed below.

3

with Plaintiff and took other actions toward foreclosing on the mortgage and forcing a sale of the Property. Generally speaking, Plaintiff alleges the defendants' representations in their correspondence and legal process were false, misleading, or fraudulent because they misrepresented the defendants' status and interest in the debt and the Property or because they failed to follow the proper procedures in seeking to enforce whatever interest they rightfully had. These allegations are offered in support of Plaintiff's FDCPA, RESPA, and TILA claims; his quiet title and declaratory judgment claims seek to have the court establish Plaintiff's ownership of the Property.

In its motion for sanctions, Nationstar asserts Plaintiff conveyed the Property in fee simple to the 3417 Danner Circle Trust (the "Danner Circle Trust") by executing a statutory warranty deed on March 24, 2010. (Doc. 68-1 at 1). The mailing address for the Danner Circle Trust is listed on the statutory warranty deed as "PMB 364, 1919 Oxmoor Road, Birmingham, AL 35209." (*Id.* at 2). The statutory warranty deed was recorded in Jefferson County on March 25, 2010. (*Id.* at 3).

On May 5, 2010, Plaintiff executed a quitclaim deed, conveying any remaining interest in the Property from Plaintiff to the Danner Circle Trust. (Doc. 68-1 at 4). The quitclaim deed lists the Danner Circle Trust's address as 3417 Danner Circle, Birmingham, AL 35243. (*Id.*). This deed describes the trust as a "private contract trust" and identifies the trustee as Cynthia G. Beeckman. (*Id.*). No further details about the nature of the trust or its terms are listed. (*Id.*). The quitclaim deed includes language which purports to "remove[]/release[]/discharge[]" the "Mortgagee(s), Successor Mortgagee(s), Substituted Mortgagee, Agent(s), Servicer(s), Assign(s), Transfer(s), known and unknown." (*Id.* at 5). This language specifically mentions Renasant Bank, Bank of America, N.A., Capital South Bank, Iberia Bank, and MERS. (*Id.*). The quitclaim deed was recorded in Jefferson County on May 6, 2010. (*Id.* at 4).

Plaintiff did not disclose these facts in his pleadings. At the time the motion for sanctions was filed, there had been no further conveyances of the Property since 2010, and it appeared the Trust was still the owner of the Property. (Doc. 68 at 7). Nevertheless, Plaintiff stated in his initial verified complaint that he "was and is the owner of the property" and he had never sold or intended to irrevocably grant or convey the Property to any party. (Doc. 1-1 at ¶¶ 7, 13-14). Yocum made identical allegations as to his ownership of the Property in the FAC. (Doc. 5). Because the documents creating the Danner Circle Trust are not before the court, the undersigned cannot evaluate whether Plaintiff could be considered the owner of the property. However, it is clear from the conveyance by statutory warranty deed, and later by quitclaim deed, that Plaintiff did intend to convey the Property to another party – i.e., the Danner Circle Trust or its trustee, Cynthia Beeckman.

In light of the district judge's order that he would be permitted one final opportunity to amend, Plaintiff was granted several extensions of time to obtain counsel and amend his complaint. (Docs. 43, 47, 49). On October 11, 2016, Plaintiff filed the SAC and alleged the same facts regarding ownership and conveyance of the Property as he made in the initial complaint and FAC. Specifically, he stated:

> Plaintiff, is at all times herein mentioned **the owner** and/or entitled to possession of the property located at 3417 Danner Circle, Birmingham, AL 35243… Plaintiff is, and has been, in continuous possession of the Property. … Plaintiff does not have a landlord-tenant relationship with any person. **Plaintiff has never sold the Property, and has never intended to irrevocably grant or convey the Property to any party.**

(Doc. 51 at 198) (emphasis added). Plaintiff also stated the following:

> The Plaintiff herein claims he has superior title to the subject real property in fee simple title, by virtue of a Statutory Warranty Deed granted to him by Patricia Morris Yocum on November 7, 2000 ….

(Doc. 51 at 3).

5

2. Plaintiff's statements and omissions in other litigation

As Nationstar points out in its motion for sanctions, Plaintiff has made similar statements about the Property in the course of litigation in other venues.[3] Shortly following the 2010 conveyances to the Danner Circle Trust, Plaintiff filed for bankruptcy in the Northern District of Alabama ("*Bankruptcy I*"). *In re: James Albert Yocum, Jr.*, No. 10-04284-BGC-13 (Bankr. N.D. Ala. *filed* Jul. 15, 2010). On July 30, 2010, Plaintiff filed a schedule in which he listed the Property as his homestead and stated his interest in it was worth $400,000. *Bankruptcy I* at Doc. 23, p. 3; *see also* (Doc. 68-4). In his statement of financial affairs filed the same day, Plaintiff stated he had made no "other transfers" besides those listed, which did not include the transfers of the Property. (Doc. 68-4 at 20). He stated he had not transferred any other property "either absolutely or as security within two years immediately preceding" the commencement of the 2010 bankruptcy case. (*Id.*). Notably, in that same section, Plaintiff further stated he had not transferred any property within the last ten years to any "self-settled trust or similar device of which [he] is a beneficiary." (*Id.*).

Approximately two months after filing *Bankruptcy I*, Plaintiff, proceeding *pro se*, filed a civil action in this court ("*Yocum I*"), centered on the same Property at issue here. *Yocum v. BAC Home Loans Servicing, LP*, 2:10-cv-02574-AKK (N.D. Ala. *filed* September 22, 2010). On March 9, 2011, another judge in this district struck Plaintiff's amended complaint[4] and warned

---

[3] The undersigned takes judicial notice of the public records of related actions in this district and in the Circuit Court of Jefferson County, Alabama. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Nguyen v. United State*s, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (federal court may take judicial notice of its own records); *Davis v. Self*, 547 Fed. App'x 927, 929-30 (11th Cir. 2013) (holding district court properly considered state court records in ruling on motion).

[4] Notably, Plaintiff identified himself as "the legal and equitable owner" of the Property. *Yocum I* at Doc. 12.

him about his failure to comply with the rules of pleading. *Id.* at Doc. 13. He was specifically admonished to pay heed to Rule 11's standard regarding factual allegations. *Id.* at 5.

In 2011, Plaintiff filed for Chapter 13 bankruptcy again ("*Bankruptcy II*"). *In re: James Albert Yocum, Jr.*, No. 11-01997-BGC-13 (Bankr. N.D. Ala. *filed* Apr. 8, 2011). On April 8, 2011, Plaintiff filed a Schedule A in which he stated, as he had done in *Bankruptcy I*, that his interest in the Property was valued at $400,000. *Id.* at Doc. 2, p. 3; *see also* (Doc. 68-5).

In 2012, Plaintiff filed for Chapter 13 bankruptcy ("*Bankruptcy III*"). *In re: James Albert Yocum, Jr.*, No. 12-00008-BGC-7 (Bankr. N.D. Ala. *filed* Jan. 3, 2012).[5] Plaintiff made similar statements in this petition as he made in his previous bankruptcy filings. (Doc. 68-6). On March 20, 2013, *Bankruptcy III* was closed without discharge upon the court's finding that Plaintiff had "<u>concealed</u> records, if there were any, from which his financial condition could be ascertained." *Bankruptcy III* at Doc. 64, p. 14 (emphasis original).

In April 2014, ten days after filing the instant case, Plaintiff again filed for Chapter 13 bankruptcy ("*Bankruptcy IV*"). *In re: James Albert Yocum, Jr.*, No. 14-01659-TOM-13 (Bankr. N.D. Ala. *filed* Apr. 28, 2014).[6] Plaintiff failed to file the required schedules upon initiating his 2014 bankruptcy case. *Id.* at Doc. 10. A hearing was held, and the case was dismissed in light of Plaintiff's failure to appear at the hearing, file the required schedules, and respond to the court's order to show cause and the findings of the court in *Bankruptcy III*. *Id.* at Doc. 20-1. Additionally, Plaintiff was barred from filing any bankruptcy case for twelve months. *Id.*

---

[5] Plaintiff's 2012 bankruptcy case was converted from Chapter 13 to Chapter 7 on Plaintiff's motion. *Bankr*uptcy III at Doc. 64, p. 2.

[6] On April 18, 2014, Plaintiff filed the instant case in the Circuit Court of Jefferson County, Alabama. *Yocum v. Nationstar Mortgage, LLC*, No. 01-CV-2014-000287 (Jefferson Cty. Cir. Ct. *filed* Apr. 18, 2014). Plaintiff's initial complaint stated he "was and is" the owner of the Property, had never sold it, and never intended to irrevocably grant or convey it to any other party. (Doc. 1-1 at ¶¶ 7, 13-14).

On January 23, 2017, Plaintiff filed another civil action in the Circuit Court of Jefferson County, Alabama ("*Yocum III*").[7] *Yocum v. Nationstar*, No. 01-CV-2017-900272 (Jefferson Cty. Cir. Ct. *filed* Jan. 23, 2017). Through counsel, Plaintiff moved for a temporary restraining order on April 4, 2017. *Id*. at Doc. 29. Attached to the motion, Plaintiff filed an affidavit in which he attests he owns the Property by virtue of the 2000 statutory warranty deed conveying it from Patricia Yocum to Plaintiff. *Id.* at Doc. 31; *see also* (Doc. 68-10). On May 26, 2017, Nationstar and other defendants filed a motion for sanctions in *Yocum III*. *Yocum III* at Doc. 53. On August 10, 2017, Plaintiff's counsel moved to withdraw from *Yocum III*. *Id.* at Doc. 96. The court entered an order granting the motion to withdraw on August 17, 2017, and it appears Plaintiff is proceeding *pro se*. *Id.* at Doc. 101. The motion for sanctions remains pending as of the date of this report and recommendation and is scheduled for a hearing on August 25, 2017. Also pending is the defendants' motion to solicit testimony and inspect documents at the hearing. *Id.* at Doc. 99.

## II. STANDARD OF REVIEW

Rule 11 of the *Federal Rules of Civil Procedure* imposes standards for representations to the court and provides in pertinent part:

> **Representations to the Court.** By presenting a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to . . . cause unnecessary delay . . .;
> (2) the claims, defenses, and other legal contentions are warranted by existing law . . .;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

---

[7] Although not expressly referred to in this report as "*Yocum II*," the current federal matter is chronologically Plaintiff's second civil action, whereas *Yocum III* is his third.

8

> > support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence . . ..

Fed. R. Civ. P. 11(b). With regard to sanctions, Rule 11 provides the following in pertinent part:

> **In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11(c).

The goal of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Massengale v. Ray*, 267 F.3d 1298, 1301-02 (11th Cir. 2001) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc)). "[T]he selection of the type of sanction to be imposed lies within the district court's sound discretion." *Donaldson*, 819 F.3d at 1557. Courts are to impose a sanction which is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). When the court imposes a sanction under Rule 11, it must enter an order describing the sanctioned conduct and explaining the basis for the sanction. Fed. R. Civ. P. 11(c)(6). Finally, "[a]lthough *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, a plaintiff's *pro se* status will not excuse mistakes regarding procedural rules." *Redmon v. Lake Cty. Sheriff's Office*, 414 Fed. App'x 221, 225-26 (11th Cir. 2011) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Beyond the powers conferred by Rule 11, the court also retains inherent power to impose sanctions. This inherent power includes the striking of frivolous pleadings or defenses, disciplining attorneys, punishing contempt, assessing attorneys' fees and costs, and "outright dismissal of a lawsuit." *Allapattah Serv., Inc., v. Exxon Corp.*, 372 F. Supp. 1344, 1373 (S.D.

Fla. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)). The court's inherent power must be exercised with restraint and discretion. *Chambers*, 501 U.S. at 44.

Although outright dismissal is a "particularly severe sanction," it is nevertheless within the court's discretion. *Id.* at 45. Dismissal is appropriate as a sanction where the sanctioned party has lied to the court. *See, e.g., Vargas v. Peltz,* 901 F. Supp. 1572, 1581-82 (S.D. Fla. 1995) (dismissing plaintiff's sexual harassment suit when it was revealed plaintiff had fabricated evidence and lied at deposition); *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687 (8th Cir. 1992) (per curiam) ("Fraud on the court is grounds for dismissal with prejudice."). Put another way, dismissal is appropriate where lesser sanctions would be ineffective. *Chemtall, Inc. v. Citi-Chem, Inc.,* 992 F. Supp. 1390, 1410 (S.D. Ga. 1998) (finding defendant had engaged in abusive conduct, including lying under oath, and a lesser sanction would not suffice).

### III. ANALYSIS

Plaintiff responds to the motion with three arguments: (1) the misrepresentations Nationstar has identified were not intentional and, therefore, cannot support Rule 11 sanctions, certainly not dismissal; (2) Plaintiff's claims are brought pursuant to the mortgage contract, which confers a right to sue to dispute default, acceleration, or foreclosure, so there is no material difference between him and the trust for purposes of standing; and (3) he is entitled to amend his claims to reflect that the trust is the true owner of the property, and by doing so, all problems presented by his misrepresentations will be resolved. (Doc. 72).

As explained below, the undersigned finds Plaintiff's misrepresentations of fact were intentional and recommends dismissal on that basis. The undersigned also recommends dismissal because further amendments would be required for Plaintiff to proceed but are

nevertheless prohibited by a previous order, which should not be altered under the circumstances.

### A. Sanctions

The undersigned finds Plaintiff's pleadings contain contentions that are not only without evidentiary support but are in direct contradiction to the circumstances as he knew them to be when he filed his complaints in this action. Specifically, the court finds Plaintiff intentionally conveyed the Property to an express trust by executing the March 24, 2010 statutory warranty deed and the May 5, 2010 quitclaim deed. Both of these conveyances were signed by Plaintiff personally, a fact he does not deny.[8] Therefore, while the exact nature and terms of the trust are unknown to the undersigned, Plaintiff's statements cannot be read as true, or even possibly true.

Here, Plaintiff has repeatedly misrepresented, both while proceeding *pro se* and with the assistance of counsel, that his ownership interest in the Property is by virtue of the deed executed to him by Patricia Yocum in 2000. *See* (Doc. 1-1 at 3-4; Doc. 5 at 3-4; Doc. 51 at 3-4). Specifically, in the SAC, Plaintiff, knowing the allegation to be baseless, stated:

> The Plaintiff herein claims he has superior title to the subject real property in fee simple title, **by virtue of a Statutory Warranty Deed granted to him by Patricia Morris Yocum** on November 7, 2000 ….

(Doc. 51 at 3) (emphasis added). Again, Plaintiff had already conveyed the Property in fee simple. Whatever interest or title Plaintiff could conceivably have retained in the Property was not "by virtue of" the deed granted to him by Patricia Yocum in 2000. Plaintiff further asserted:

> Plaintiff, is at all times herein mentioned **the owner** and/or entitled to possession of the property located at 3417 Danner Circle, Birmingham, AL 35243… Plaintiff is, and has been, in continuous possession of the Property. … Plaintiff does not have a landlord-tenant relationship with any person. **Plaintiff has never sold the Property, and has never intended to irrevocably grant or convey the Property to any party.**

---

[8] The undersigned also notes Nationstar's allegation that the notary who signed Plaintiff's deeds in 2010 was subsequently convicted of tax fraud. (Doc. 73 at 2 n.1).

11

(*Id.* 51 at 198) (emphasis added). However, Plaintiff clearly intended to "irrevocably grant or convey the Property" when he granted and conveyed fee simple title to the Danner Circle Trust on March 24, 2017, and recorded the conveyance on March 25, 2017.

Even if the undersigned were willing to believe Plaintiff, at the time he filed this action, had forgotten two conveyances made four years earlier, it is inconceivable he had forgotten those transfers at the time he made similar statements to the bankruptcy court. Likewise, it is not plausible Plaintiff's declarations to the bankruptcy court were inadvertent. First, Plaintiff stated to the bankruptcy court in July 2010 that he owned an interest in the Property worth $400,000 and there had been no transfers of the Property within two years of his bankruptcy filing. *Bankruptcy I* at Doc. 23. Plaintiff made these false statements a mere four months after he had, in fact, transferred the property[9]. Plaintiff repeated these misrepresentations in two of his subsequent bankruptcy cases. *See Bankruptcy II* at Doc. 2, *Bankruptcy III* at Doc. 21.

Further, Plaintiff had knowledge of Rule 11's obligation to exercise reasonable diligence in investigating the evidentiary basis for his factual allegations and the legal basis for the relief he has requested. In general, any litigant is responsible for being aware of the requirements of the Rules of Civil Procedure. Fed. R. Civ. P. 1 (scope of the Rules is they govern the procedure

---

[9] Plaintiff also stated he had not transferred any property within the last ten years to any "self-settled trust or similar device of which [he was] a beneficiary." *Bankruptcy I* at Doc. 23. It appears exceedingly likely that the Danner Circle Trust is a self-settled trust of which Plaintiff is a beneficiary. This is because one of the deeds refers to the Danner Circle Trust as a "private contract trust." (Doc. 68-1 at 4). The undersigned has been unable to find any specific definition of a "private contract trust." However, trusts are "express" when they arise at law from an executed document, such as a contract, as opposed to a "resulting" or "constructive" trust which arises at equity by declaration of the court. Thus, Plaintiff's deeds conveying the Property to the Danner Circle Trust appear to describe an express trust. Because the name of the trust is the street address of the Property, there is little room for doubt it was intended that the Property be the sole asset of the trust and Mr. Yocum would be the beneficiary. If this is true, Plaintiff's denial of a transfer to a "self-settled trust or similar device of which [he was] a beneficiary" is false as well.

in all civil actions and proceedings in the United States District Courts); Fed. R. Civ. P. 11(a)-(b) (every pleading, written motion, and other paper must be signed by attorney or party, and by presenting a pleading, motion, or other paper the presenter certifies compliance with Rule 11). On that basis, Plaintiff is presumed to be familiar with the requirements of the Rules. Further, another judge sitting in this court has previously instructed Plaintiff—in an action closely related to this one—on the provisions of Rule 11 relating to factual allegations. *Yocum I* at Doc. 13. Finally, Plaintiff himself has explicitly referenced the duty to exercise reasonable diligence in verifying factual assertions. In the FAC filed in this case, he stated:

> Plaintiff has not had adequate time to exercise reasonable diligence to identify all persons mentioned in Alabama Code – Section 6-6-[561] who 'shall' be named as defendants. Therefore, Plaintiff intends to amend this Complaint after the opportunity to exercise reasonable diligence.

(Doc. 5 at ¶ 30). Taken together, these facts make clear Plaintiff is, and was at the time of filing this matter, fully aware of the standards and obligations which apply to his litigation.

The undersigned has taken care to consider the distinction between misstatements of fact made in good faith, as opposed to those which are not. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 373-74 (6th Cir. 1996) (The "gravaman of Rule 11 [is not in] the filing of the claim that eventually turns out to be meritless, but rather the persistence in pursuing that claim after the pleader has or should have become aware of its lack of merit."); *cf. Blackburn v. Calhoun*, 2008 WL 850191 (N.D. Ala. Mar. 4, 2008) (though Rule 11 sanctions were not warranted when facts were accepted as true under Rule 12(b)(6) review, evidence collected during discovery might well support sanctions by revealing that basis for suit was improper and plaintiff knew factual claims were baseless when the suit was filed).

Other circumstances suggest Plaintiff acted intentionally in making his false allegations. For example, it now appears Plaintiff has caused several additional transfers of the Property. On

June 14, 2017, the Danner Circle Trust conveyed the Property to the "N.I.G.D. Trust," which then conveyed the Property to an entity called Grand View Financial, LLC, on June 30, 2017. (Doc. 73 at 2-3). Grand View Financial, LLC, appears to have then taken out a $50,000 mortgage on the Property from an entity called Sharp Financial, LLC, which immediately declared bankruptcy in the Central District of California on July 5, 2017. (*Id.* at 3). When Sharp Financial, LLC, declared bankruptcy, it obtained an automatic stay of proceedings and stymied a scheduled foreclosure sale of the Property on July 5, 2017. (*Id.*). All of this has taken place since the motion for sanctions was filed in this case.

While the assistance of counsel has made no difference in Plaintiff's misrepresentations, the undersigned is unable to determine whether counsel was complicit in Plaintiff's false statements or simply failed to investigate the facts of the case and the allegations of the pleadings he signed. Nonetheless, the court finds Plaintiff's characterization, through counsel, that the state court in *Yocum III* "refused to impose sanctions," is misleading at best. (Doc. 72 at 2, n.2). In its oral statements during a hearing on June 26, 2017, as well as in a subsequent written order, the state court merely declined to rule on the motion until further information was available. (Doc. 73-4 at 6). Thus, its recent actions cannot reasonably be considered a refusal to impose sanctions. Moreover, Plaintiff's counsel did not take any action to correct the pleadings after Mr. Yocum's true interest in the Property was communicated to him by Nationstar's counsel; it was not until the undersigned ordered Plaintiff to respond to the motion for sanctions that counsel addressed the issues. (*See* Doc. 68-3 (letter to Plaintiff's counsel dated May 12, 2017); Doc. 72 at 1, n.1).

Because Plaintiff's false statements go directly to the ownership of the Property and his identity as the proper party in interest, there is no doubt his conduct relates to a pivotal issue in

the case, and sanction is warranted. Indeed, the need for sanction is heightened where the conduct relates to a pivotal issue in the case. *See, e.g., Vargas*, 901 F. Supp. at 1581-82.

For the reasons stated above, the undersigned concludes Plaintiff, despite his insistence to the contrary, has knowingly, intentionally, and repeatedly misrepresented material facts to the court. *See Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 610-11 (S.D.N.Y. Nov. 10, 2011) (concluding that, notwithstanding plaintiff's insistence that false statements were inadvertent mistakes, the circumstances of his statements and the facts surrounding them made clear he was intentionally misrepresenting facts to the court). Based on Plaintiff's actions in this matter alone, dismissal is an appropriate sanction. Additionally, Plaintiff's recurrent efforts to take advantage of the legal system, often simultaneously and in multiple venues, based on the same material misrepresentations, demonstrate a complete and callous disregard for the consequences of his tactics, both in terms of the resources expended by other parties and the court and in the integrity of the judicial forum as a vehicle for resolving legitimate disputes. Plaintiff's conduct in this case and others evidences total disrespect for the effects of his dishonesty. Therefore, dismissal is warranted to prevent Plaintiff from consuming any more resources in the instant case and as a deterrent to Plaintiff himself and others who are inclined to approach this and other courts with similar bad faith.

Rule 11 permits an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Payment of fees and costs should only be imposed on motion and where they are "warranted for effective deterrence." *Id.* Nationstar has specifically requested attorney fees and costs, as well as dismissal of this case. (Doc. 68 at 12). The undersigned finds Plaintiff has knowingly been in violation of Rule 11 from the outset of this lawsuit and his violation has continued up to the present. Accordingly, in addition to recommending this action be dismissed

with prejudice pursuant to the court's inherent power, the undersigned recommends the court retain jurisdiction to determine if an additional sanction is warranted for effective deterrence and, if so, the extent to which Nationstar's costs "directly resulted" from Plaintiff's Rule 11 violation. *See EEOC v. American Automobile Assoc.*, 1976 WL 13288 (S.D. Fla. 1976) (dismissing case without prejudice and taxing costs and attorney fees against the plaintiff as a sanction); *In re: Robinson*, 198 B.R. 1017 (N.D. Ga. 1996) (imposing fees and expenses in addition to dismissing case and barring debtor from refiling any petition for 180 days); *Aguiar v. Natbony*, 2011 WL 4387180 (S.D. Fla. 2011) (awarding costs and fees to the defendant as a prevailing party after plaintiff's claims were struck as a sanction); *Petrano v. Old Republic Nat. Title Ins. Co.*, 2013 WL 1325030 (N.D. Fla. 2013) (granting dismissal with prejudice pursuant to the court's inherent authority to sanction and retaining jurisdiction for the imposition of costs and fees as a further sanction).

**B. Further Amendment Of The Complaint**

Plaintiff suggests in his response to the motion for sanctions that further amendment could cure any defects created by his false statements. The undersigned concludes this is not so.

1. Further amendments prohibited by court order

First, the court has disallowed any further amendments. This was not a casual or arbitrary limitation. Instead, the court noted Plaintiff's claims were already tenuous but permitted "one, final amendment." The court did not grant leave to amend as Plaintiff saw fit, and the court did not grant leave for Plaintiff to correct as-yet-uncontemplated deficiencies in his complaint. To the contrary, the scope of leave to amend was limited to claims Plaintiff had

already attempted to state in his initial complaint and FAC, to address the deficiencies which the court had spelled out.[10]

2. Rules 17 and 19

Even if Plaintiff were permitted to further amend his complaint to correct the false allegations discussed above, these are not the only amendments which would be required. First, as to many of Plaintiff's claims, it appears the trustee of the Danner Circle Trust may be the real party in interest under Rule 17. If so, the trustee would have to be added as a party to this action. Regardless, the trustee is likely an indispensable party who must be joined pursuant to Rule 19.

Rule 17 states the following:

**Designation in General.** An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with whom or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute.

Fed. R. Civ. P. 17(a)(1).

In general, the real party in interest is the person holding title to the claim or property involved, as opposed to persons who may be interested in or may benefit from the litigation in some way. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (holding that "prudential" standing rules such as Rule 17 encompass, among other things, the general prohibition on a litigant raising another person's legal rights). The document creating the Danner Circle Trust is not in the record, so the undersigned cannot determine whether the trustee is the real party in interest here. However, the general rule in Alabama is that when an

---

[10] This is why, when Plaintiff filed an SAC which added numerous claims and parties, the undersigned entered a report recommending all of the extraneously pleaded claims and parties be struck. The court had already severely restricted Plaintiff's latitude to further amend his complaint, and he violated the court's instructions as to amendments before the issue of his false statements was ever raised.

17

"individual grantor places his property in an active trust, the grantor's legal title to that property passes to the trustee." *Ex Parte Callan Assoc., Inc.*, 87 So. 3d 1161, 1166-67 (Ala. 2011). The trustee has title to the trust property and has all powers necessary to make the trust productive and safe; indeed, "the right to sue in the ordinary case vests in the trustee as a representative." *Id.*; *see also FBO David Sweet IRA v. Taylor*, 4 F. Supp. 3d 1282, 1284-85 (M.D. Ala. Mar. 19, 2014). This general rule is reflected in Rule 17(a)(1)(E), which provides for a trustee of an express trust to be sued in his or her own name without naming the beneficiary. Notably, the reverse is not permitted. Fed. R. Civ. P. 17(a)(1).

Further, the trustee of the Danner Circle Trust is almost certainly an indispensable party who must be joined pursuant to Rule 19. "Generally speaking, the trustee is an indispensable party…" *Rudd v. Branch Banking & Trust Co.*, 2016 WL 7209727 (N.D. Ala. Aug. 8, 2016) (citing *Drath v. Armstrong*, 141 So. 634, 637 (Ala. 1932) (both trustee and beneficiary are necessary parties to an action seeking to establish respective interests)). Here, the undersigned has reason to believe Plaintiff is the beneficiary of the Danner Circle Trust (or at least *a* beneficiary) since he has apparently been allowed to live at the Property for which the Trust was named. If Plaintiff is not the beneficiary, then both the beneficiary and the trustee would have to be joined in order for this action to proceed. In either case, this action cannot proceed without joining the trustee, thus, introducing an entirely new party. In sum, it is not just that the Plaintiff's false statements violate the rules of court. They are also misrepresentations which cannot be corrected without fundamentally altering the character of the litigation. This action cannot proceed with James Yocum, Jr., as the sole plaintiff.

Whether the trustee would have the ability to pursue Plaintiff's TILA, RESPA, and FDCPA claims is something the undersigned declines to consider, given the level of speculation which would be required to arrive at an answer. For the same reason, Plaintiff's contention that

the mortgage contract confers a right to sue is also beside the point. (Doc. 72 at 2). Although Plaintiff contends in his SAC that the mortgage contract requires him to assert his quiet title action (Doc. 51 at 24), Plaintiff has never grounded his claims in contractual standing before. Rather, he has asserted them based on his status as the Property's legal and equitable titleholder. Plaintiff was afforded several opportunities to correctly assert claims he had standing to bring. This case is before the court to determine whether Plaintiff should be allowed to continue pursuing the claims he has already asserted, not for the purpose of determining what claims Plaintiff might have brought had he chosen to pursue his legal rights honestly.

The undersigned finds that even if Plaintiff were allowed to amend his misrepresentations and identify the true nature of his legal and/or equitable interest in the Property, Plaintiff could not proceed in compliance with Rules 17 and 19. The undersigned has concluded Plaintiff knew of the defects in his allegations. Although he was granted limited leave to correct his pleadings, he made no effort to do so with regard to the statements which have now been revealed as false, and there is no basis for the court to conclude he ever would have done so. To allow Plaintiff to further amend his complaint would undermine all parties' respect for the obligation of litigants to follow the court's orders and the rules of procedure. Accordingly, Plaintiff's motion for leave to amend is denied, and his claims are due to be dismissed because they are no longer supported by the pleadings.

## IV. CONCLUSION

For the reasons explained above, the undersigned finds Plaintiff has knowingly and intentionally made false representations of material fact to the court. By doing so, he has violated Rule 11 of the *Federal Rules of Civil Procedure*. The nature and circumstances of Plaintiff's violations warrant dismissal. Moreover, this action cannot proceed without additional amendments which are prohibited by previous order of the court; if they were permitted, such

amendments would result in unnecessary and unjustifiable expenditures for the adverse parties and the court. Accordingly, the undersigned **RECOMMENDS** this action be dismissed with prejudice. The undersigned further **RECOMMENDS** the court retain jurisdiction to determine whether costs, including attorneys' fees and expenses, should be taxed to Plaintiff James A. Yocum, Jr.

V.   **NOTICE OF RIGHT TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the *Federal Rules of Civil Procedure,* any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

**DONE** this 24th day of August, 2017.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE